SouTHAitn J.
I am directed to deliver the opinion of the court, and to waive the question of jurisdiction, as one upon which it is not necessary, in this case, to decide. In doing this, however, without entering into any argument upon the subject, I must individually remark, that the question is of no ordinary importance ; and I think it will require, in me, a great struggle both of feeling and judgment, ever to arrive at the point, where I shall be prepared to deny the jurisdiction of the state, and say, that she has surrendered her independence, on questions like this; that her highest judicial tribunals, for such purposes, is incapable of inquiring into the imprisonment of her citizens, no matter how gross or illegal it may be, provided it be by agents of the United States, and under colour of their laws.
There are, indeed, cases of daily occurrence, in which the citizens of the state are parties, but of which we have not jurisdiction. They are those which originate from, and depend altogether upon the nature, character, and powers of the general government, and which would not have existed without its formation : such, for example, as relate to its revenue. These subjects, belonging, in all respects, exclusively to the United States, the state or its agents cannot judge concerning them, unless the power *644 be expressly granted by the constitution, to which the has given its assent. There are other questions, where the state and federal courts both have jurisdiction. are such as existed, and were the subjects of state cog'nizance and judicial notice, before the *formation of the general government, and are given to the United States, altogether without words of exclusion used in applif^e state. They are possessed by the federal courts, because expressly given; they are retained by the states, upon the impregnable ground that they have never been surrendered. The present appears to me to be a case' where the right of jurisdiction did exist in this court, in full, ample, and complete extent, and it must, therefore, still exist, unless surrendered by clear, explicit, and indubitable grant. It is a right of judgment upon habeas corpus; it is a question of imprisonment or release of the citizen. When and how were that right and question, the dearest to the citizen ; relating to the highest duty of a government, to the proudest attribute of sovereignty; given up and surrendered ? Have we lost the jurisdiction, because we cannot construe and determine the extent and operation of acts of congress? We are often compelled to construe them ; they are our supreme law when made in conformity with the constitution. Is it because the United States is a party ? How does she become a party on such a question? Is she a party for the purposes of despotism, whenever a man who holds a commission from her, shall, without legal authority, or in violation of her own statutes, injure, imprison, and oppress the citizen ? Surely not. Is it because the United States judges have jurisdiction. Thejurisdiction of one does not exclude the other, unless expressly and in words so ordained and ordered. To my mind, therefore, under its present impressions, there is no real difficulty on this part of the case. The power of this court, in rescuing the citizens from unlawful imprisonment, is without limit from any of these sources; and I do not see how it can be otherwise, so long as any portion of sovereignty remains in the state. But I have merely suggested these ideas, because the subject is deeply important, and I did not feel willing to give the assent which would seem to arise from silence, to the doctrine that *645 jurisdiction was not in this court, upon this question. These suggestions, however, are to be regarded as my own, the opinion of the court resting on other grounds.
The facts in the case are these. Isha Davidson, is a child of poor parents, and was bound out, under our statute, by the overseers of the poor; before he was eighteen years old he left his master, without his consent, and enlisted, and received the bounty and clothes which are always given on the enlistment. His mas*ter claimed him from the-officer under whose command ho was, who surrendered him, taking, it is understood, security for the bounty and value of the clothes. After this, the master, of his own will, without any interference on the part of the officers, returned in company with Davidson, and freely surrendered him, upon the enlistment which had been made, and confirmed that enlistment as far as he could, by endorsing his consent upon it, and receiving the security which he had given for the bounty. Davidson was removed to Fort Mifflin; an application made for a habeas corpus in Philadelphia, and Davidson adjudged to be freed from the imprisonment complained of. On his return with his master, he was here again taken possession of by the officer, and this occasioned the issuing of the present writ.
In looking into the facts, it is very obvious that the conduct of the master has not been such, as to excite any feeling, on the part of this court, in his favour. If he loses the service of his apprentice, he must charge the loss to his own conduct. It is also obvious that the discharge in Philadelphia, furnishes no impediment to the investigation of the case here. The decision of the court there, could in no possible respect, bind this court, and close its inquiry on this subject. Its opinion may have been correct, yet a contrary opinion may be equally correct here and at this time. Its inquiry and command must be bounded by the state, in which it sat, and although the imprisonment may have been unlawful there, yet another state of facts may have occurred, which will render it lawful here. It is true the judgment of that court purports to be not only a discharge from the imprisonment, but from the enlistment also; but it is not *646 perceived, how upon, the habeas corpus, the court can go the confinement, which is the great and sole object of the writ. Nor can we see what evidence was offered, in order to determine whether the whole case was exhibited, or whether we are called on to form a judgment upon a totally different case. Were we to judge alone from the record, or from that, connected with the admissions of the parties, even the enlistment itself was not shewn, nor was it at all proven, that the master had at any time given his consent. It is believed that these facts were concealed. But be this as it may, we do not apprehend that that record impedes our inquiry.
The right of Isha Davidson to a discharge, depends upon the *proper construction of the acts of congress fixing and regulating the military peace establishment of the United States. They provide for the enlistment of persons between the ages of 18 and 35, and 5 feet 6 inches high; but the regulation as to height and age, is not to extend to musicians nor to those soldiers who re-enlist into the service. And “ no person under the age of twenty-one years shall be enlisted or held in the service without the consent of his parent, guardian or master) first had and obtained, if any he have.” In the construction of these provisions we must not lose sight of three ideas. 1. That the power to raise armies has' been expressly granted to congress. They have full and entire control over it. What they enact therefore on that sub-just, is to be liberally construed. 2.- We are not to regard the employment or profession of a soldier as unprofitable or dishonourable, or in any way injurious to the citizen. Whatever may be our private feelings, when looking into an act of congress making provision for the creation and support of an army, we are not permitted to regard it, in an unfriendly or unfavourable light. So far as relates to the import of the laws and the objects of the government, it is to be esteemed both a profitable and reputable profession. No inference therefore is to be made in favour of the discharge of an infant, because the enlistment is against him and not for his benefit. 3. The provisions of the law authorise the enlistment for musicians, of persons under 18 years. There is but one form of enlist *647 ment ever provided or used, under the laws, or the rules and articles of war; and as persons are enlisted under for musicians, and all are enlisted under the same form, it must be shewn that the object here was not to make him a musician. We do not presume and infer this. It must be proved. But we are, in this case, left without information upon the point.
The result of these ideas is, that an officer may enlist a person under 18, and the enlistment is not void, as against law and the interest of the infant: it is voidable only, and that by those who have a right to complain. He may be enlisted, but he cannot be held, after it is shewn, that some one has a right to complain of his detention.
The persons whose consent is pointed out as necessary, are the parent, the guardian or the master. But is the consent of all necessary ? Certainly not, if the ideas before suggested, or the phraseology of the law, be well considered. These persons are *named in the disjunctive; the business is regarded as honourable; the only thing which any one is considered as losing, is, the service of the person enlisted. The person entitled to that, is the only one whose consent is to be obtained. The want of the master’s consent therefore, where there is a master who claims the service, is the only one which can avoid the enlistment. He is the only person who can claim the discharge. By whom then can the release of Isha Davidson be demanded ? Not by himself. So far as he can, he has more than once consented, and as far as I perceive, even now consents; and, in no respect does he suffer wrong. By his parents? He is the child of the public. I do not know that he has parents living. If he have, they long since gave up all control over him. By the guardians ? They have discharged their duty in disposing of and binding him, and they lose nothing by his change of situation. By the master ? He was entitled to the service ; his consent ought to have, been obtained ; and not having been, the enlistment was voidable if he demanded his servant. But he alone can make the demand; he alone can avoid the enlistment. Can he now do it ? He has in the most solemn and voluntary manner given and subscribed his consent. He thus ratified and ren *648 dered valid an act which he might have avoided, and to validity of which his consent only was wanting. He brought back his apprentice, and with the approbation both, delivered him to the officer and took up the secur^y be had given for the bounty and clothing. Shall he now be permitted to reclaim him and thus hold both ^ie service and ^be bounty ? It would be as much against justice as against law. He has barred himself from complaint. He cannot now destroy the enlistment, which he before legalized.
The opinion of the court therefore is, that none but the master had a right to claim the discharge of the minor; that the master has prevented himself from making this claim; that no illegal imprisonment is perceived; that no cause has been shewn, why Isha Davidson should be discharged ; and it is therefore ordered, that he be left in the custody of the defendants.